**HABANT In Re**

**WEST, Gdn. v LEVIN & LEVIN, etc.**

Common Pleas Court, Lorain Co.

No. 41384. Decided Feb. 13, 1940.

A H. West and Wilcox & Wilcox, Elyria, for appellant.

Levin & Levin, Lorain, for appellees.

For Court of Appeals opinion see **62 Oh Ap 522.**

## OPINION

By COOK and FINDLEY, JJ.

These proceedings to fix attorney fees were instituted by the direction of the Industrial Commission of Ohio in the Probate Court of Lorain county. No record being made there, the matter was tried de novo in the Common Pleas Court.

In 1927 John Habant met with an accidental injury during the course of his employment by The National Tube Company. Some years later he consulted at least three lawyers concerning his claim for compensation. They found him to be vexatious, and two of them gave him little time. Attorney Charles F. Adams undertook the matter, but found it impossible to proceed because of the client's behavior.

Some time thereafter and in November of 1934, Mr. Habant consulted Levin & Levin, the claimants herein. They undertook to prosecute the claim upon a contingent fee basis, and with the consent and approval of Mr. Habant's relatives, entered into a written contract with him (Exhibit 4) which provided that for their services they should have a sum equal to twenty-five per cent of the recovery, if any.

The claim was a desperate one. Seven years had elapsed and the witnesses were unknown. His new counsel advanced the theory that the injury caused an immediate and continuous mental derangement. An application for compensation was filed with the Industrial Commission of Ohio and diligently prosecuted.

During the several months that the claim was pending, Mr. Habant's conduct toward his attorneys and his behavior in their offices were reprehensible. He waited in the hallway for their offices to open in the morning and followed the attorneys on the street at lunch time and remained at their offices until they closed. Often he was violent and abusive and interfered with other clients. When they tried the plan of doing their office work at night, he learned of it, to their disadvantage.

However his counsel remained steadfast and finally obtained for him an award under which $7,026.76 has been paid to the guardian. As of January 19, 1940, accrued and unpaid compensation was $2,511.60. The employer's application to modify or vacate the award is pending before the Industrial Commission.

The National Tube Company was a self-insurer. It refused to make pay-

ment except to a guardian. Securing the appointment of one was difficult because of Mr. Habant's resistance. Finally his counsel obtained the favorable action of the Probate Court, and the ward's mother became his first guardian. Later she was removed because of her refusal to file an account. The Probate Court then appointed Attorney R. F. Vandemark as guardian. He acted for a time and then resigned. Thereupon the present guardian, Attorney A. H. West, was appointed, and on an appeal to this court by the ward the appointment was confirmed.

Attorney West and his counsel and also counsel otherwise employed have made a spirited defense in the case at bar. They urge, among other things, that the fees for the claimants should be fixed with regard to the amount of money now in the hands of the third guardian. While protracted and extensive litigation has reduced the fund, let it be remembered that there would be no fund except for the claimant's legal services. They endured the abuse of their client and prosecuted his claim to a successful conclusion. They should be paid with reference to ▬▬▬ ▬ what they secured for him rather than with reference to what he now has left of it.

The file of the Industrial Commission of Ohio has been made a temporary exhibit in this case by agreement of counsel. It was marked Exhibit No. 11, and, by agreement, it has been temporarily returned to the Industrial Commission. The court read all of this exhibit, but without adding to the markings made therein by former readers. The exhibit has been considered along with Claimants' Exhibit No. 10; only for its bearing upon the character and extent of the legal services rendered.

However a complete reading also has furnished certain facts now about to be set forth. The page numbers of evidence taken by the Industrial Commission of Ohio on August 23, 1937, will be preceded by the letter A, and the page numbers of evidence taken by it on November 14, 1939, will be preceded by the letter B.

John Habant is a divorced man, thirty-nine years of age. He reached the fifth grade in school. Entering industry, his labor and record were erratic. At the age of nineteen he threatened violence to the master mechanic of The American Ship Building Company and said he would cut the tires from his car (B29). When he was discharged on that day of November 15, 1919, this entry was made upon his employment card: "Do not rehire; is not in right mind (A101)."

While not in any way material to the case at bar, nor connected with its decision, we have noted that Mr. Habant has testified, under oath, before the Industrial Commission of Ohio concerning many unusual circumstances. For instance, when told to report for examination by Dr. Karnosh, an eminent specialist of the city of Cleveland, he stepped off the elevator in an office building and found a slim young man with black hair and a yellow face waiting for him who gave him instructions on feigning insanity. This young man, so he says, represented the Industrial Commission and was from Columbus, Ohio (B13). Dr. Karnosh, so Mr. Habant says, entered into the plot, and among other things said, "If you are not crazy, we will make you crazy (B17)."

Probate Judge Nye, so Mr. Habant says, required him to divide the compensation checks (A83 and 84). The former guardian, Attorney R. F. Vandermark, so Mr. Habant says, wrongfully took $3,150 (A86). Attorney Jacob Levin, so Mr. Habant says, counseled him to murder Probate Judge H. C. Wilcox (B8).

Dr. H. H. Drysdale, another eminent specialist of the city of Cleveland examined Mr. Habant and his written report of October 5, 1926, included within Exhibit No. 11, found him to be "* * * a psychoneurotic of the obessive type * * *."

However Mr. Habant is a brilliant man of exceptional persuasiveness. He has related tales of the need of his

aged mother and himself for milk and bread and medical care that have aroused men of broad experience. They have not learned from their careful examination of him that in fact he had ample funds and consistently rejected the use of any part thereof by himself or by his mother.

A judge of the United States Circuit Court, who formerly was the dean of an Ohio Law School, listened to Mr. Habant at Columbus, and being ·convinced, thereafter made a trip to Lorain county to investigate its court records. The eminent judge would perhaps be surprised to learn that Mr. Habant's recollection of the transaction is, in part, as follows:

"Mr. Arant was sore when I wouldn't give him the case (B92)." Mr. Habant also testified that the former dean tried to obtain from him the sum of $500, upon the payment of which he would immediately be able to put Judge Nye behind the bars.

During the time that the claim before the Industrial Commission of Ohio was pending, Mr. Habant consulted the claimants and secured their professional services upon other legal matters enumerated in the third cause of action, and for which the claimants ask compensation.

The evidence indicates that these services were extensive. They included an investigation of the proceedings relating to the settlement of the estates of his father and mother and related to his former arrests by police officers and to the aid of his brother, who was then indicted for the crime of incest. However it does not appear that the services were of any pecuniary advantage ·to the ward, and accordingly the motion of the guardian made at the conclusion of all of the evidence for a directed verdict against the claimants on their third cause of action will be granted.

Claimant's first cause of action is based upon a contingent fee contract that will not be enforced. █ Mr. Habant did not have the mental capacity to make a valid contract. The further

fact that the contract may have been worthless under the case of **Adkins v Staker, 130 Oh St 198, 1 OO 579,** does not modify the holding in **Brown v Bruner, 10 Oh Ap 314** that reasonable compensation may be allowed although the fee contract was void.

A consideration of **§§1465-90 and 1465-111 GC,** and of the decision in **McCamey v Payer, 135 Oh St 660, 15 OO 21,** decided July 12, 1939, indicates no denial of the right of an █ attorney to receive compensation in **quantum meruit** for his services before the Industrial Commission of Ohio. See also **Carson v Beall, 55 Oh Ap 245, 8 OO 272.**

Being required to fix the fees, we will now consider the amount thereof.

Paragraph 2 of Canon 12 of the Canons of Professional Ethics adopted by The American Bar Association reads as follows:

"In determining the amount of the fee, it is proper to consider: (1) the time and labor required, the novelty and difficulty of the questions involved and the skill requisite properly to conduct the cause; (2) whether the acceptance of employment in the particular case will preclude the lawyer's appearance for others in cases likely to arise out of the transaction, and in which there is a reasonable expectation that otherwise he would be employed, or will involve the loss of other employment while employed in the particular case or antagonisms with other ' clients; (3) the customary charges of the Bar for similar services; (4) the amount involved in the controversy and the benefits resulting to the client from the services; (5) the contingency or the certainty of the compensation; and (6) the character of the employment, whether casual or for an established and constant client. No one of these considerations in itself is controlling. They are mere guides in ascertaining the real value of the service."

The following statement appears in 5 Am. Jur., 379, —, Attorneys at Law, Section 198:

"In the absence of an express contract of employment between an attorney and his client fixing the amount of the attorney's compensation, it is generally held that the attorney is entitled to what his services are reasonably worth, or what has usually been paid to others for similar services. The determination of this depends largely upon the circumstances of the particular case. Among other things to be considered are the importance and results of the case, the difficulties thereof, the degree of professional skill and ability required and exercised, the skill, experience, and professional standing of the attorney, and the prominence or character of the parties, where it affects the importance of the litigation, as well as the amount or values involved or recovered. The value of the services of an attorney is necessarily to be determined by many considerations besides the mere time visibly employed in the conduct of a suit altho in the absence of other evidence, the court must be guided in estimating the value of attorney's services by the time or amount of labor performed as indicated by the record.

"Where the fee is to be contingent upon success, the magnitude of the result achieved or the doubtfulness of the case when instituted should be considered in estimating the value of the services rendered, and not the number of pleadings filed, or their length, or the number of times counsel appeared in court, or the number of hours consumed in oral argument."

We agree with the finding of the Probate Court "that the professional services rendered by said counsel were necessary; that the same were of unusual and extraordinary nature, were highly proficient, and consumed an unusual and extraordinary amount of time."

Upon a full consideration of all the facts, we find the fair and reasonable value of the services rendered to be $3,000, and this the claimants are allowed as compensation in full, and the right to recover further fees upon future payments, if any, that may be made to the guardian is expressly barred.